No. 12,732.

ROBINSON MINERAL SPRING CO., LIMITED, VS. LOUIS P. DEBAUTTE.

All the stockholders of a corporation having executed a full, complete and perfect act of ratification of an adjudication at public auction, same relieves the sale of any and all the alleged illegalities in the proceedings leading up to

81

same, such as want of authority in the board of directors to direct a sale to be made, and that the adjudication was at a price less than a stockholders' meeting had previously authorized to be accepted therefor.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Ernest T. Florance* for Plaintiff, Appellant.

*G. V. Soniat* and *E. Howard McCaleb* for Defendant, Appellee.

Argued and submitted April 21, 1898.
Opinion handed down June 22, 1898.
Judgment amended and rehearing refused June 30, 1898.

## ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

WATKINS, J.  The motion is based upon several grounds.

1. That the appeal is premature.

The appeal is prosecuted from a final and definitive judgment which rejects the plaintiff's demand from which he is appellant.

It appears that in the lower court, the auctioneer who sold the property in controversy took some proceedings looking to the deposit in the possession of the clerk of court of the sum of four hundred and fifty dollars; but that proceeding was not initiated until some days after the date of the judgment, and the appeal had been taken.

We can not perceive in what way these proceedings affect or prevent the party already cast from appealing from the judgment which had been already rendered against him.

2. That certain documents are missing from the transcript.

But the motion fails to state, that said papers had been filed in the suit prior to the rendition of judgment, or that their non-production is attributable to the appellant in any way.

Failing in this, mover shows no cause for complaint.

3. That the plaintiff applied for and obtained a previous order of appeal which it failed to perfect and prosecute.

The present appeal was taken in exact keeping with our opinion in State *xe rel.* Minerai Springs Co. vs. Jndge, 49 An. 1527.

The motion to dismiss is denied.

## ON THE MERITS.

This suit has for its object to compel the defendant to accept title to the property described in the petition of plaintiff, and comply with the terms of the adjudication by paying his bid of four thousand five hundred dollars, with interest.

On the trial there was judgment in favor of the defendant rejecting the plaintiff's demands, and from that judgment he has appealed.

*In limine,* the defendant tendered several exceptions, viz.:

1. The court was without jurisdiction because the property in dispute is situated in the State of Mississippi.

2. That the charter of the plaintiff, a Mississippi corporation, does not authorize the board of directors to sell, transfer or assign the lands in controversy; nor to prosecute a suit which has for its object the alienation of realty.

These exceptions were by the judge *a quo* referred to the merits to stand as part of the defendant's answer.

The theory of plaintiff's suit is, that on the 6th day of May, 1896, there was sold at public outcry, by an auctioneer of the city of New Orleans, a certain described tract of land situated in the county of Madison, State of Mississippi, containing two hundred acres more or less, less certain reservations mentioned and described, and that at said offering same was adjudicated to the defendant for the sum of tour thousand five hundred dollars, and same was evidenced by a *proces verbal* which bears date June 27, 1896.

That on the 30th of June, 1896, the plaintiff made a formal tender of an act of sale, but that the defendant refused and declined to accept the same or to pay the price of adjudication.

Plaintiff corporation shows that the defendant and adjudicatee was at the date of said adjudication and for some time thereafter the president of the corporation, and, as such, personally cognizant of all the affairs of the company; and that he knew of the causes and reasons which led up to said sale, and was, as president, charged with the duty of consummating and carrying same into effect.

That it, in accordance with the expressed wish of the defendant,

obtained and annexed to the title tendered to him, " the written consent and ratification of all the stockholders of the corporation, and of all parties in any wise interested directly or indirectly in said property."

That the defendant refuses to accept title for certain insufficient reasons and causes of which he was well aware at the time of the adjudication " and which he, as president of such corporation, is estopped to deny, as same were known to him, or to assert same in his own behalf."

The defendant in answer avers, that, at the time of the adjudication, he was of the impression that the title to the property " was registered in the name of the corporation, which was found on investigation not to be a fact;" and that he found the title to same to be " defective and cloudy " for the following reasons, viz.:

1. That the charter of the corporation does not authorize the Board of Directors to sell said property, and hence the act of the board in so doing was *ultra vires.*

That a meeting of the stockholders authorized a sale for not less than ten thousand dollars, and that figure was not subsequently changed.

2. That the land being situated in the State of Mississippi and not having been registered in the name of the corporation, but left standing in the names of the individual corporators, the corporation could not legally convey same.

3. That upon ascertaining these facts he demanded a ratification of the title by all the stockholders in whose name the property stood before he would sign and complete the same, and that same should be done prior to the 22d of June, 1896, and that failing in this the sale would be canceled.

And that the corporation failed to procure the ratification of all the stockholders, and that hence his obligation to accept the title was at an end.

It conspicuously appears from the foregoing that the defendant was president of the plaintiff corporation at the time of the adjudication before and since—until the month of October subsequent thereto; and, on that account, is conclusively presumed to know the terms and stipulations of its charter, and to possess full and accurate information of the title to its property.

As president, he was, necessarily, charged with the duty of super-

intending and caring for the interests and well-being of the general stockholders.

The corporation having acquired the ownership of a valuable piece of real estate and taken title thereto, the president necessarily possessed knowledged of same without the title having been formally recorded.

The points on which the defendant's counsel rely are (1) that the charter of the corporation did not authorize the board of directors to sell its property under any circumstances; (2) that a meeting of the stockholders authorized a sale for ten thousand dollars and nothing less; (3) that the title being originally in the names of the original corporators, and their title to the corporation not having been recorded prior to the adjudication, the conveyance tendered is a questionable one; (4) that the title tendered to the defendant as adjudicatee was not subsequently ratified by all the stockholders.

Whether the charter of the corporation authorized the directors to make the sale or not is of no consequence, as it is specially admitted that the stockholders had authorized the sale, albeit for a price in excess of the amount for which it was adjudicated to the defendant.

It is of no consequence that the title of the corporation to the property sold had not been formally registered at the date of the adjudication—

(1) For the reason that same was a purely formal act which could be performed subsequently, and thus make the adjudicatee perfectly secure.

(2) The want of registry does not go to the validity of the conveyance, or create a cloud over the title, unless and until some adverse right has been intermediately acquired thereupon to the prejudice of the adjudicatee.

This state of facts is neither alleged nor shown.

But if all these things be as claimed for them by the defendant's counsel, same are cured perfectly and completely by the subsequent ratification of the stockholders.

And the plaintiff in his petition claims that the corporation procured and produced a full and complete ratification of the sale and adjudication to the defendant for the sum and price of four thousand five hundred dollars, and that same was annexed to and made part of the act of sale which was tendered to the adjudicatee.

The pertinent facts which are necessary to be considered are, that in 1893 a number of gentlemen residing in the city of New Orleans formed a syndicate for the purpose of purchasing the property known as the Robinson Mineral Springs In the State of Mississippi.

Their names are:

| | |
|---|---:|
| George Q. Whitney | $1,000 |
| I. L. Lyons & Co. | 1,000 |
| H. R. Gogreve | 1,000 |
| Isidore Hernsheim | 1,000 |
| W. W. McWhan | 1,000 |
| E. T. Shepard | 1,000 |
| Pearl Wight | 1,000 |
| L. P. De Bautte | 1,000 |
| Fred. G. Ernst | 1,000 |
| Chas. Scheeneck | 500 |
| C. O. Wilcox | 500 |

All of them except Charles Scheeneck paid in the amount of money placed opposite to their respective names, and W. E. Lawrence took his place.

L. E. Lyons, acting as the agent or trustee of the syndicate, purchased the property in dispute, and thereupon the plaintiff corporation was organized and the defendant was chosen president.

In June, 1893, this property was purchased by the corporation in pursuance of a resolution which was adopted at a meeting of all the stockholders.

Soon afterward George Q. Whitney transferred his interest to Herman Roehl, and same was formally recognized by the company.

Of all these facts and transactions the defendant as president had full knowledge; and this fact is evidenced by the minutes kept by the corporation.

He had then full knowledge of the withdrawal of both Scheeneck and Whitney, because he had issued to new holders the *pro rata* of stock which had been allotted to them in consideration of the assignment of their respective interests in the aforesaid property.

From the 30th of May, 1893, to the 29th of October, 1896, the defendant was continuously president of the corporation—he becoming adjudicatee on the 6th of May, 1896, of the aforesaid property.

Notwithstanding it was the duty of the defendant, as president, to have had the title of the corporation recorded, he failed and neglected to do so; and, during a period of three years, he caused the corporation to be advertised as the owner, to place its goods on sale as owner, and as owner, to actually expend all of its available resources and contract an indebtedness of one thousand seven hundred dollars beyond its means.

And finding the corporation placed in the impossibility of paying off this debt, the president inaugurated the proceedings necessary to effect a sale of said property in order to satisfy same, and appeared on the day of sale and bid it in for the sum of four thousand five hundred dollars; and when a title is tendered him, he declines compliance with the terms of the adjudication upon the technical grounds, which he either created, or is directly and immediately responsible for as the president of the corporation.

Every stockholder was duly notified of the resolution of the Board of Directors to sell, by a registered letter, and the receipt of each one of them is produced in evidence; and with this evidence, and having received no protest from any director, the company proceeded with the sale.

The defendant having raised the foregoing objections after the auction sale, a formal written ratification by every one of the stockholders was procured and same was annexed to and made a part of the title which was tendered to the adjudicatee.

That is to say, every single stockholder with the exception of Whitney and Scheeneck, but including Lawrence and Roehl, who had three years previously, and to the full knowledge of the defendant and adjudicatee, been substituted in their respective places.

In our opinion, the ratification was full, perfect and complete, and it cured all the suggested defects in the proceedings.

The judgment must be reversed and the defendant adjudged to accept title and complete the adjudication by paying the price.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that there be judgment in favor of the plaintiff, and compelling and requiring the defendant to accept the title tendered to him and complete the adjudication by paying the price and all costs of both courts.

### ON APPLICATION FOR REHEARING.

BLANCHARD, J. The contention is that the court omitted to consider the exceptions of want of jurisdiction and no cause of action. These were filed by defendant *in limine* and after argument thereon were ordered by the trial judge to be referred to the merits. Whereupon defendant, reserving the benefit of his exceptions, filed his answer.

The exceptions appear not to have been specifically passed upon

by the court below. Its general judgment was in favor of defendants, apparently on the merits, rejecting the demands of plaintiff, and this appealed ensued.

This court, considering also the case on its merits, reached the conclusion the judgment was erroneous and decreed its reversal.

Defendant, in this application, reiterates its plea to the jurisdiction and contends that this being a suit for the specific performance of a contract of sale of land situated in another State, the courts of Louisiana are without jurisdiction to compel defendant to accept title and to pay the purchase price.

There is no force in this contention.

When a party domiciled in this State purchases in this State from another, also in this State, property located in another State, he can be sued here in the court of his domicile, which has jurisdiction to compel compliance by order or decree acting directly on the person of such purchaser, and held to pay the price which he contracted to pay. Seixas vs. King, 39 La. Ann. 512; Hayden vs. Yale & Bowling, 45 La. Ann. 362.

This is a suit for the price with tender of title. The *situs* of the property does not affect the completeness of the contract of sale, nor the liability to pay the price therefor.

The court had jurisdiction.

It is further contended that an obligor will not be compelled to specifically comply with his contract where the obligee can obtain redress by a suit for damages for non-performance, and for this reason no cause of action herein is shown.

Numerous decisions of this court in the past attest beyond controversy the right of action by a vendor against his vendee to compel compliance with the terms of a sale agreed upon, or with those of an adjudication made at public auction.

By the codal provisions of the law the obligations of a buyer are to pay the price of sale and to receive delivery of the thing sold. C. C. 2549.

And on failure of the buyer to pay the price, the seller may compel him to do it by offering to deliver the thing to him. C. C. 2551.

That is the present case. Defendant is tendered the title and is sued for the price of the sale.

There is no foundation for the exception of no cause of action.

On the merits our conclusion is that no reason exists for changing

the judgment heretofore rendered by this court, so far as same holds the defendant liable.

The plaintiff files a petition in the nature of an application for rehearing, asking that the decree herein be amended by directing payment of interest by defendant at the rate of five per cent. per annum on the amount of the purchase price from the date of adjudication, which was May 6, 1896.

The original petition asks for interest only from June 30, 1896, the date of the tender of title. Interest should be allowed from that time, and the decree will be corrected accordingly.

For the reasons assigned it is ordered that a rehearing be refused, and, amending our former decree, it is now adjudged and decreed that the judgment appealed from be annulled and reversed, and that there be judgment in favor of the plaintiff ordering and compelling defendant to accept the title of the property tendered him on the 30th of June, A. D. 1896, and condemning him to pay to plaintiff the sum of four thousand five hundred dollars, the price thereof, together with legal interest thereon from said 30th of June, A. D. 1896, until paid, and costs of both courts.